CITY OF INDIANOLA *v.* SUNFLOWER COUNTY.

In Banc. May 8, 1950.

No. 37757 (46 So. (2d) 81)

**J. M. Forman,** for appellant.

**Neill, Clark & Townsend** and **Satterfield, Ewing & Hedgepeth,** for appellee.

**Lee, J.**

Supervisors' Districts Numbers 1, 2 and 3 of Sunflower County, acting under Chapter 435, Laws of 1948, proposed to establish and operate a community hospital in the City of Indianola. The City, realizing the benefits which would accrue to its citizens from such an institution, by deed, contributed certain lots, which it owned, as the site for the hospital. Later some question arose concerning the title; and Sunflower County, acting for the three Supervisors' Districts, brought its suit against the City to confirm the title.

The City, by demurrer, raised the question that the lots constituted a donation by the City, and, on that account, the deed was void. After the demurrer was overruled, the City declined to plead further, and a final decree was entered confirming the title, as prayed for. From this decree the City appealed.

A city derives its existence and powers by charter from the State. It can do and perform all acts

for which it has authority thereunder, except such as may be in conflict with the Constitution. 62 C. J. S., Municipal Corporations, Section 183, p. 339. Hence, there is involved in this controversy, the constitutionality of Section 1, Chapter 435, Laws of 1948, which is in part as follows: ''Any county, city, town, supervisors district, or election district of a county, separately or jointly with one or more other counties, cities, towns, supervisors districts or election districts of the same or other counties, may acquire and hold real estate for hospital, health center, health department, and related purposes and thereon establish, erect, build, construct, remodel, add to, equip, operate and maintain community hospitals, nurses' homes, health centers, health departments, and related facilities within the limits of any such political subdivision or parts thereof. Any such political subdivision, or parts thereof, acting hereunder may contract and otherwise cooperate with any department or agency of the United States government or of the state of Mississippi, or any other county, city, town or supervisors district or election district of the same or other counties, in carrying out of any of the powers herein conferred or otherwise effectuating the purposes of this act and in so doing accept or contribute from or to the other, gifts, money, real properties, existing hospital, health center, health department or related facilities, or any other suitable property.''

It will be seen that this Act authorized the City to contribute the real estate in question as a site for this hospital. Of course, cities now have no authority to make a gift to an individual or a private corporation. Trowbridge v. Schmidt, 82 Miss. 475, 34 So. 84; Adams v. Jackson Electric Ry., Light & Power Co., 78 Miss. 887, 30 So. 58; Brister v. Leflore County, 156 Miss. 240, 125 So. 816; and Carothers v. Town of Booneville, 169 Miss. 511, 153 So. 670. But the three Supervisors Districts here are political subdivisions and do not fall in the category of private corporations. Thus Turner v.

City of Hattiesburg, 98 Miss. 337, 53 So. 681, is a complete answer that Chapter 435, supra, is not in violation of Section 183 of the Constitution.

But appellants contend that Swetman et al. v. Harrison County, Miss., 42 So. (2d) 801, sustains its position. In that case, there was a donation for a health center by the City of Biloxi of school property which was held by it in trust, when there was a statutory method for disposition of such property. Chapter 201, Laws of 1944. The Court did say, however, that no donation could be made even if the City held a fee simple title.

But it appears from a consideration of the opinion that the question of the right of the City, under Chapter 435, supra, to make the donation was not called to the attention of the court. Although school land could not have been donated, yet, if the City owned the lots in fee simple, under said Chapter, there was authority for a contribution. After the case was decided, on suggestion of error for the first time, the city's authority under this chapter was called to the attention of the court. Contrary to the rule against entertaining new questions on suggestion of error, the court saw sufficient merit therein to request briefs on the point. Before the suggestion of error was finally passed on, the Legislature enacted a statute, validating the conveyance. This was made known to the court and thereafter the suggestion of error was overruled. Thus it is seen that the question now being decided was not passed on in the Swetman case, supra.

We hold that the City of Indianola acted within its authority, under Chapter 435, supra, in contributing the lots in question as a site for the community hospital; and the decree of the lower court was correct.

Affirmed.

**Hall, J.** (dissenting.)

It is true as stated in the majority opinion herein that a city derives its existence and powers from the state. It is also true that it has no powers except those expressly conferred upon it by the state.

There is no authority of law for the City of Indianola to donate the lots in question to the supervisors' districts unless that authority is found in Section 1, Chapter 435, Laws of Mississippi of 1948, a portion of which section is quoted in the majority opinion. Immediately following that portion of Section 1 which is quoted by the majority, the same section further provides: "In acting jointly hereunder the board of supervisors of any county, acting for the county, supervisors district or election district of a county, and the mayor and board of aldermen, or city council, or other like governing body of any city or town, acting for the city or town, are hereby authorized and empowered to contract with each other for and on behalf of the political subdivision or part thereof which each represents with respect to any and all things related to the matters and things herein authorized and particularly to apportion and prorate the ownership of the property acquired or to be acquired in such a joint undertaking; to determine the proportionate part of the cost of maintenance, support and operation to be assumed, contributed and paid by each, and the amount of money therefor each will raise from taxation; . . .".

In my opinion the whole scheme of said Section 1 is to authorize a municipality to contract jointly with some other political subdivision for the erection and maintenance and operation of a public hospital. The first paragraph of that section expressly provides that any political subdivision "acting hereunder may contract and otherwise cooperate with" other political subdivisions. The second paragraph provides "In acting jointly hereunder" the board of supervisors and the governing body

of the municipality "are hereby authorized and empowered to contract with each other for and on behalf of the political subdivision or part thereof which each represents with respect to any and all things related to the matters and things herein authorized." Provision is then made for apportionment and proration of the ownership of the property as well as the cost of maintenance and operation of the hospital. It is quite clear to me that the entire chapter deals with the matter of a joint undertaking between a municipality and some other political subdivision for the construction, maintenance and operation of a public hospital. In this case there was no joint undertaking between the City of Indianola and the three supervisors' districts. The hospital is to be built, maintained and operated exclusively by the supervisors' districts, and the city has nothing whatsoever to do with its construction, maintenance or operation, and the city has made no contract with the supervisors' districts, but has conveyed as a simple donation the lots in question to the supervisors' districts. If it has such authority it is solely by virtue of the cited statute, and I do not believe that the statute is broad enough to grant such authority upon the facts here presented.

**Smith, J.**, concurs in this dissent.